UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LESTER NASH,

                          Plaintiff,

          vs.                                                                    8:08-CV-541
                                                                                 (NAM/DEP)

THE VILLAGE OF ENDICOTT, THE ENDICOTT
POLICE DEPT., DWAYNE J. SMITH (Police Officer),
JENNIFER QUINN (Police Officer), MICHAEL
KAMINSKY (Detective Sgt.), MICHAEL SCULLY
(Detective), CRAIG WILLIAMS (Detective Lt.); and
S.F. CARPENTER (Detective); in both their official
and their individual capacities,

                          Defendants.
_____

APPEARANCES:                                              OF COUNSEL:

LESTER NASH
*Plaintiff Pro Se*
07-B-1788
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

SHANTZ & BELKIN                                          M. Randolph Belkin, Esq.
*Attorneys for Defendants Village of Endicott*
 *and Endicott Police Dept.*
26 Century Hill Drive, Suite 202
Latham, New York 12210

THE TUTTLE LAW FIRM                                     James B. Tuttle, Esq.
*Attorneys for the Individual Defendants*
10 Century Hill Dr., Suite 4
Latham, New York 12110

Norman A. Mordue, Chief U.S. District Judge

MEMORANDUM-DECISION and ORDER

I.       INTRODUCTION

Plaintiff, Lester Nash, who is presently incarcerated, was arrested twice by officers of the Village of Endicott Police Department in the fall of 2005 for charges involving violations of the New York State vehicle and traffic law, drug violations and endangering the welfare of a child. Plaintiff sues under 42 U.S.C. § 1983 arguing that the defendants, all police officers employed by the Village of Endicott, executed his arrests in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Article 1 §§ 6, 8 11 and 12 of the New York State Constitution. Plaintiff asserts he was arrested because of his race, that he was unlawfully searched, that his vehicle was unlawfully seized, that he was detained without probable cause, that he is a victim of abuse of process, that defendants conspired to violate his rights, that he was falsely arrested, that he was maliciously prosecuted, and that he was retaliated against. Defendants have moved for summary judgment dismissing the complaint. Plaintiff, though served with the appropriate notice pursuant to Local Rule 56.2, has not filed papers opposing defendants' motions.

II.    RELEVANT FACTS

On October 18, 2008 at approximately 6:46 p.m. while Police Officer Dwayne Smith was on routine patrol heading southbound on Odell Avenue in the Village of Endicott, he observed a green Honda turning on to Odell Avenue that did not have any headlights on. This observation by Officer Smith was made more than one half hour after sunset on Tuesday, October 18, 2005 as sunset that day was formally at 6:12 p.m. The above circumstance provided Officer Smith with probable cause to believe that the driver of the green Honda was in violation of New York State Vehicle and Traffic Law Section 375 which requires motor vehicle operators to illuminate their

vehicle's headlights commencing not later than one half hour after sunset.  Officer Smith determined that a traffic stop was in order and proceeded to pull over the green Honda.  Officer Smith exited the vehicle and approached the driver, plaintiff Lester Nash, who was alone in the vehicle, and advised Mr. Nash that his headlights were not on.

Officer Smith requested that Mr. Nash provide the officer with his license, registration and insurance information for the vehicle.  Lester Nash instead provided Officer Smith with a New York State Identification Card setting forth the plaintiff's name and then told the officer that he did not have a valid driver's license.  Officer Smith advised Mr. Nash that he needed to find out why the plaintiff had no license and to determine whether there were any outstanding warrants for Mr. Nash's arrest.  At this point, Mr. Nash advised Officer Smith that his driver's license was suspended and asked that Officer Smith not issue a ticket.  Officer Smith ran plaintiff through the New York State Department of Motor Vehicles database and learned that Mr. Nash's license was revoked and that he had a prior conviction for aggravated unlicensed operation of a motor vehicle in the third degree dating to October 14, 2004.

Officer Smith then asked Mr. Nash to sit in the back of his patrol unit and Mr. Nash complied.  The officer planned to complete his paperwork and issue two uniform traffic tickets to Nash.  Officer Smith further advised Mr. Nash that New York State required the vehicle to be impounded as Mr. Nash was driving unaccompanied by the registered owner.  The officer advised Mr. Nash that an inventory of the vehicle's contents would be made at the impound lot and asked plaintiff whether he wanted to retrieve anything from the vehicle before it was towed.  Mr. Nash indicated that he did not, but appeared at that point to become nervous.  Officer Smith then asked

Mr. Nash whether there was anything dangerous or illegal in the vehicle to which Mr. Nash replied, in sum and substance, that there was a lot of marijuana between the center console and the driver's seat. By this time, Officer Smith was being assisted on scene by Police Officer Quinn who then began a search of the vehicle for any illegal substances. In addition to finding marijuana, Police Officer Quinn also found a white rock substance prompting Officer Smith to ask Mr. Nash whether this was cocaine to which Nash answered "Yes." As a result of the traffic stop, Mr. Nash was cited for a violation of the aforementioned section of the Vehicle and Traffic Law as well as the New York State Penal Law Sections 220.16 and 221.05 (a class B felony and violation respectively) concerning crack cocaine and marijuana.

During the time of the traffic stop, both Police Officer Dwayne Smith and Police Officer Jennifer Quinn were in the scope of their employment as police officers employed by the Village of Endicott and were following proper procedure as set forth in the Endicott Police Department Traffic Stop Procedures Manual. Mr. Nash was arrested, handcuffed and transported to the Endicott Police Department and placed in a jail cell for further processing. Prior to being placed in handcuffs and while in the back of the police car, Mr. Nash was permitted to use his cell phone to make several phone calls to his fiancé, Nikeya Elliott (the registered owner of the vehicle).

Defendant Detective Sergeant Michael Kaminsky processed Mr. Nash following his arrest. Mr. Nash was already known to Detective Sergeant Kaminsky who had already been assisting the New York City Police Department and the New York State Police with a homicide investigation in which the plaintiff was a suspect. During the course of processing Mr. Nash, the Detective Sergeant learned that two cell phones and a Blackberry had been on Mr. Nash's person

4

at the time of the traffic stop and these items might prove germane to the ongoing homicide investigation.

In due course, a search warrant was issued regarding the undercover operations that were ongoing at the time.  Additional search warrants issued thereafter based upon information yielded from the prior searches and ongoing investigation.

On November 17, 2005, plaintiff Lester Nash was arrested on two counts of criminal possession of a controlled substance in the third degree, one count of criminal possession of marijuana in the fourth degree, and one count of endangering the welfare of a child.  Mr. Nash was arraigned in the Justice Court of the Town of Union on November 17, 2005, and remanded to the Broome County Jail without bail.

III.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See id.*  The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support

the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the

nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R.

Civ. P. 56(e).

When the non-moving party " 'chooses the perilous path of failing to submit a response to

a summary judgment motion, the district court may not grant the motion without first examining

the moving party's submission to determine if it has met its burden of demonstrating that no

material issue of fact remains for trial." ' *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.

3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F. 3d 677, 681 (2d Cir. 2001).  If the

movant does not meet its burden of production, then a court must deny summary judgment even if

the non-movant does not oppose the motion.  *See id.*  Moreover, the court may not rely solely on

the movant's statement of undisputed facts contained in its Rule 56.1 statement.  *See id.*  The court

must be satisfied that the movant's assertions are supported by the evidence in the record.  *See id.*

(citing *Giannullo v. City of New York*, 322 F. 3d 139, 140 (2d Cir. 2003)).  When a nonmoving

*pro se* party has failed to submit papers in opposition to a motion for summary judgment,

summary judgment may be granted as long as the court is satisfied that the undisputed facts

"show that the moving party is entitled to a judgment as a matter of law," and plaintiff has

received notice that failure to submit evidence in opposition may result in dismissal of his or her

case.  *Champion v. Artuz*, 76 F. 3d 483, 486 (2d Cir. 1996).

It is with these considerations in mind that the Court addresses defendants' motions for

summary judgment.

B.      Defendants' Motions

6

1.      Race Discrimination Against Officer Smith

Plaintiff claims that he was stopped by Officer Smith because of his race and "ethnical characteristics" in violation of the federal and state constitutions.  Although Officer Smith does not address this allegation in his affidavit, he does aver that he stopped plaintiff because he was operating his vehicle without headlights more than one half hour after sunset in violation of New York State Vehicle and Traffic Law.  Since plaintiff has failed to oppose defendants' motion and the mere allegation of race discrimination in his complaint is not sufficient to defeat defendant's motion for summary judgment, his claim for alleged race discrimination by Officer Smith must be dismissed.

2.      *Monell* Claim Against Village of Endicott

Plaintiff alleges in his complaint that it was the "unofficial custom/policy" of the Village of Endicott and its Police Department to conduct traffic stops "according to tactics of race profiling of non-white citizens."  The Court finds this claim does not meet the criteria set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because he does not establish any incidents of substantive fact outside of his arrest and prosecution to demonstrate a municipal policy or custom which resulted in alleged constitutional violations.  Review of the complaint does not reveal the alleged municipal policy at the heart of plaintiff's Monell claim.  Indeed, plaintiff simply claims that the alleged policy of racial profiling led to his being stopped by Officer Smith on October 18, 2005.  He cites no additional facts or circumstances in support of his claim that a policy of racial profiling exists in the Village of Endicott or its Police Department.

In *Monell*, the Supreme Court reviewed the legislative history of  42 U.S.C. § 1983 and

concluded that Congress did not intend to impose broad liability on municipalities. *See* 436 U.S. at 690. Thus, under § 1983, a municipality may not be held liable for the acts of its employees based solely on a theory of respondeat superior. *See Monell*, 436 U.S. at 690-91. It is only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights that it is liable for the injury. *See id.* at 692. Moreover, it is necessary that the policy or custom be made by one "whose edicts or acts may be said to fairly represent official policy." *Id.* at 694. Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the unlawful action of which a plaintiff complains. *See Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986). Finally, to establish municipal liability, the policy must actually **cause** the violation of constitutional rights; it must be the moving force behind the violation. *See Monell*, 436 U.S. at 692.

Plaintiff, having failed to prove the existence or involvement of race discrimination by Officer Smith, has likewise failed to plead or prove an unconstitutional municipal policy of racial profiling by the Village of Endicott or its Police Department. Consequently, plaintiff's *Monell* claims must be dismissed.

3.      Unlawful Search and Seizure

Plaintiff's third cause of action asserts that defendant Officers Smith and Quinn conducted an illegal search and seizure of his vehicle without probable cause, thereby violating his rights under the Fourth, Fifth and Fourteenth Amendments. "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be

arrested." *Singer v. Fulton County Sheriff*, 63 F. 3d 110, 119 (2d Cir. 1995); accord *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).  In evaluating probable cause, courts consider the facts available to the officer at the time of the arrest.  *Martinez v. Simonetti*, 202 F. 3d 625, 634 (2d Cir. 2000); *Lowth v. Town of Cheektowaga*, 82 F. 3d 563, 569 (2d Cir. 1996); *see also Broughton v. State of New York*, 37 N.Y.2d 451, 458 (1975).

In the first instance, it is clear from the affidavit of Officer Smith that he had probable cause to arrest plaintiff for aggravated unlicensed operation of a motor vehicle in the third degree and impound said vehicle, which also requires the vehicle to be inventoried upon being seized. According to New York Vehicle and Traffic Law § 51, a person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the second degree:

> [W]hen such person commits the offense of aggravated unlicensed operation of a motor vehicle in the third degree as defined in subdivision one of this section; and
>
> (i) has previously been convicted of an offense that consists of or includes the elements comprising the offense committed within the immediately preceding eighteen months; or
>
> (ii) the suspension or revocation is based upon a refusal to submit to a chemical test pursuant to section eleven hundred ninety-four of this chapter, a finding of driving after having consumed alcohol in violation of section eleven hundred ninety-two-a of this chapter or upon a conviction for a violation of any of the provisions of section eleven hundred ninety-two of this chapter; or
>
> (iii) the suspension was a mandatory suspension pending prosecution of a charge of a violation of section eleven hundred ninety-two of this chapter ordered pursuant to paragraph (e) of subdivision two of section eleven hundred ninety-three of this chapter or other similar statute; or
> (iv) such person has in effect three or more suspensions, imposed on at least three separate dates, for failure to answer, appear or pay a fine, pursuant to subdivision three of section two hundred twenty-six or

9

subdivision four-a of section five hundred ten of this chapter.

A person is guilty of aggravated unlicensed operation of a motor vehicle in the third degree:

> [W]hen such person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner.

According to Officer Smith's affidavit, when he ran plaintiff's name through his computer, it revealed he had seven (7) suspensions of his driver's license, that he had a revoked license, and a prior conviction for aggravated unlicensed operation of a motor vehicle in the third degree from October 14, 2004, in the Town of Dickenson.  Because of his prior conviction for aggravated unlicensed operation, Officer Smith had probable cause to charge him with aggravated unlicensed operation of a motor vehicle in the second degree and impound his vehicle.

Thus, the "search" conducted by police was not a search for evidence in the first instance inasmuch as Officer Quinn conducted an impound inventory of the vehicle's contents.  Moreover, plaintiff's claim of an alleged illegal search is belied by the fact that he himself provided the officers with probable cause to search his vehicle by admitting that there was a large quantity of marijuana inside prior to Officer Quinn conducting her impound inventory in any event.  Based thereupon, plaintiff's claims against defendants Smith and Quinn for an illegal search and seizure must be dismissed.

4.    Abuse of Process

Plaintiff avers that defendants Smith and Quinn fabricated evidence and arrest reports against him and falsely accused him of being in possession of controlled substances which

10

constitutes a "malicious abuse of process."  Given the evidence defendants Smith and Quinn have submitted concerning the reasons for plaintiff's stop, detention, search and arrest, his failure to oppose defendants' motion or to supplement the vague and conclusory allegations of the complaint is fatal to his claim of alleged abuse of process.

5.      Claims Against Defendant Williams

Plaintiff asserts that then Detective Craig Williams "personally authorized" his unlawful arrest on October 18, 2005 and "impermissibly used the alleged fruits of the search of his vehicle as a basis of probable cause in securing a search warrant to invade plaintiff's home."  In the first instance, as referenced above, it has already been established that Officer Smith had probable cause to arrest plaintiff for aggravated unauthorized operation of a motor vehicle.  If the arrest was legal, Williams' alleged authorization of it was irrelevant.  Moreover, as referenced above, there was no illegal search of plaintiff's vehicle because: a) the defendant officers were conducting an impound inventory; and b) even if this was not true plaintiff provided probable cause for them to search by telling them that he had a large quantity of marijuana in the car prior to them conducting the inventory search.  Since plaintiff does not otherwise indicate the search warrant or search of his home was otherwise illegal or invalid, the claims against defendant Williams must be dismissed.

6.      Illegal Detention and Conspiracy

Plaintiff alleges that defendants Smith and Quinn detained him without probable cause, which claim, as referenced above, has been debunked by the evidence presented by defendants in support of their motion.  Insofar as his claim of a conspiracy, plaintiff does not set forth any details concerning the nature, manner or object of the alleged conspiracy in this case.  These

vague conclusory allegations standing alone are insufficient to create a triable question of fact. Consequently, plaintiff's sixth cause of action must be dismissed.

7.      Failure to Train and Supervise

Plaintiff raises a second *Monnell* type claim against the Village of Endicott and its Police Department for their alleged failure to train and supervise defendants regarding the requirements of probable cause or to otherwise take appropriate disciplinary action against them for their use of impermissible tactics of race profiling, making an unlawful stop, executing an unlawful search and violating plaintiff's constitutional rights.  Again, however, there is no evidence that defendants acted in the absence of probable cause in this case, exercised racial profiling, made an unlawful stop, executed an illegal search or violated plaintiff's constitutional rights.  Plaintiff has merely claimed, but failed to submit evidence in support of his claim, that the municipal defendants were deficient in their obligation to train and supervise defendants.  Based thereupon, his failure to train and supervise claims must be dismissed.

8.      Conspiracy Claim Against Defendants Williams, Kaminsky, Scully and Carpenter

Plaintiff asserts that the above referenced defendants conspired to use the unlawful seizure of his vehicle "as a rouse [sic]" to get him to come into the police department voluntarily while his residence was being unlawfully searched.  As has been referenced numerous times above, the seizure of plaintiff's vehicle was not unlawful.  Insofar as the search of his home, if police had a warrant to search, that search was not unlawful either.  Although plaintiff alleges a "conspiracy" amongst the named defendants, again, he does not assert the nature, manner or object of the alleged conspiracy and the mere conclusory allegations of the complaint are not sufficient to defeat defendants' entitlement to summary judgment.  In the absence of any proof of an unlawful

12

search, seizure or conspiracy amongst the named defendants, plaintiff's eighth cause of action must be dismissed.

9.      False Arrest and Abuse of Process

Plaintiff alleges that defendants Sculley and Kaminsky are liable for false arrest ans abuse of process for arresting him for being in possession of a controlled substance on November 17, 2005. Plaintiff was charged under subsection one of the statute which defines being in possession of a controlled substance. According to the New York Penal Law, a person is guilty of criminal possession of a controlled substance in the third degree when "he knowingly and unlawfully possesses a narcotic drug with the intent to sell it." It is clear from defendant Sculley's affidavit that plaintiff was in possession of a quantity of crack cocaine which resulted in the charge at issue herein. Further upon review of the various reports submitted by defendants it appears that when police searched plaintiff's home they found a quantity of drugs that had been divided into individual packets, consistent with intent to sell. However, these police reports are unsworn and are not in admissible form. Defendant Kaminsky submitted an affidavit in support of the search warrant application in this case which indicated that plaintiff's girlfriend, Nikeya Elliot, had been involved in a number of controlled drug "buys" involving the New York State Police and Johnson City Police Department. It is apparent that police believed that plaintiff and his girlfriend were using their residence for the sale and storage of controlled substances and marijuana which, as it happens, turned out to be true. Unfortunately, there is nothing in the affidavits of defendants Sculley or Kaminsky, or for that matter in any of defendants' other submissions, insofar as actual proof that plaintiff intended to sell the drugs he was clearly in possession of at the time of his arrest on November 17, 2005. Based thereupon, defendants' motion for summary judgment on

13

plaintiff's ninth cause of action must be denied.

10.     Retaliation

Plaintiff asserts that his arrest on November 17, 2005, was retaliatory because he had exercised his constitutional rights to remain silent and request a lawyer.  As referenced above, defendants had lawful grounds to arrest plaintiff on November 17, 2005, for criminal possession of a controlled substance in the third degree.  Because defendants have submitted evidence that they had valid cause to arrest plaintiff, the burden shifts back to plaintiff to demonstrate that this reason is a mere pretext for a retaliatory motive which he has not done since he has failed to oppose defendants' motion.  Consequently, defendants' motion for summary judgment on plaintiff's tenth cause of action must be granted.

11.     Individual Claims Against Kaminsky

The eleventh cause of action is essentially a repeat of the fifth.  Plaintiff asserts that defendant Kaminsky used his "unlawful arrest" on November 17, 2005, and the alleged "fruits of that search and arrest" as probable cause to secure an additional warrant to search his residence which constitutes "malicious abuse of process" under the state and federal constitutions.  As there was no unlawful arrest, however, there was no abuse of process or any other potential liability on the part of defendant Kaminsky.  Based thereupon, the eleventh cause of action must be dismissed.

12.     Unlawful Detention

Plaintiff asserts that defendants unlawfully detained him on October 18, 2005, and November 17, 2005, up to December 5, 2007.  As has already been established, however, defendants had legal grounds to arrest plaintiff on both dates and detain him for trial.  Thus, this

14

claim must be dismissed.

13.    *Brady/Rosario* Obligations

Plaintiff asserts that Broome County, by and through the Broome County District Attorney's Office, neither of which is named as a defendant herein, is liable for failure to train its assistant district attorneys concerning their obligations in connection with criminal discovery.  In particular, plaintiff asserts in the vaguest of terms that the assistant district attorney(s) assigned to his criminal case were "deliberately indifferent" to their *Brady* and *Rosario* obligations and to his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.  Assuming that this claim is not automatically defunct for raising it against unnamed defendants, plaintiff has provided no facts in support of this claim even in the complaint.  There is no evidence in the record to indicate what discovery, if any, was lacking on the part of the assistant district attorney(s) in this case and how, or if, that failure contributed to plaintiff's conviction.  Given plaintiff's failure to support or amplify the bald allegations of this cause of action with evidence of any kind, this claim must be dismissed.

14.    False Evidence

Plaintiff asserts claims against Broome County and the Broome County District Attorneys Office which are not named as defendants herein alleging that they allowed false information to be introduced to Grand Jury proceedings which contributed to false evidence being used against him to secure criminal indictments against him.  Again, this claim is invalid from the outset since Broome County and the Broome County District Attorney's Office are not named as defendants herein and plaintiff has never moved to amend the complaint to add them as defendants.  As a further matter, plaintiff has once again failed to set forth any facts in support of his conclusory

15

claim that false evidence was introduced to the Grand Jury proceedings in this case. In the absence of any evidence in the record demonstrating a triable issue on this claim, it must be dismissed.

15.     Malicious Prosecution

        Plaintiff asserts that he was a victim of malicious prosecution because there was no probable cause to pursue his arrests and indictments on the criminal charges involved in this case. It is by now settled law that a judgment of conviction is a complete defense to a claim of either malicious prosecution or false arrest. *See Roesch v. Otarola*, 980 F.2d 850, 853 (2d Cir.1992). However, it appears from the affidavit of defendant Kaminsky that the charges for which plaintiff was arrested were eventually dropped against plaintiff. Although he is presently incarcerated, he is serving time on unrelated charges. However, to recover on a malicious prosecution claim under New York law, a plaintiff must prove four elements: (1) that the defendant either commenced or continued a criminal proceeding against plaintiff; (2) that the criminal proceeding terminated in plaintiff's favor; (3) that there was no probable cause for the criminal proceedings; and (4) that the criminal proceeding was instituted in actual malice. *See Broughton v. State of New York*, 37 N.Y.2d 457, 458 (1975); *Russo v. State of New York*, 672 F.2d 1014, 1019 (2d Cir. 1982).

        Clearly, the dismissal of the charges against plaintiff constitutes "favorable termination" for the purpose of his malicious prosecution claims. Establishing "favorable termination" status, however, does not cure plaintiff's failure to demonstrate the absence of probable cause for the criminal proceedings against him in the first instance. As discussed at length above, there are no triable issues concerning the objective existence of probable cause to support plaintiff's arrest on

16

the criminal charges.  Further, the Court can discern no evidence of malice on the part of defendants in reviewing the present record.  Therefore, an award of summary judgment against plaintiff on his claim of malicious prosecution is warranted.

IV.     CONCLUSION

Based on the foregoing, defendant's motions for summary judgment (Dkts. 43 and 47) dismissing plaintiff's complaint are GRANTED in part and DENIED in part.  In particular, defendants' motions are GRANTED with respect to all but the ninth cause of action and are otherwise DENIED.

IT IS SO ORDERED.

Date: September 22, 2010

Norman A. Mordue
Chief United States District Court Judge